IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUANE MARCEL HOLMES, *Petitioner,* v. MARK GARMAN, et al., *Respondents.* | CIVIL ACTION NO. 19-2854 |

**Pappert, J.**                                                                                              **March 4, 2025**

## MEMORANDUM

Duane M. Holmes, who is no longer in custody after serving a sentence for receiving stolen property, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Magistrate Judge José Raúl Arteaga issued a Report and Recommendation recommending denial of Holmes's petition, to which Holmes objected. After thoroughly reviewing the record and all claims *de novo*, the Court overrules the objections in part, adopts the R&R with modifications and denies the petition.

I

A

On April 28, 2015, a jury found Holmes guilty of receiving stolen property. *Commonwealth v. Holmes*, No. 2485 EDA 2015, 2017 WL 2541048, at *3 (Pa. Super. Ct. June 12, 2017). On July 27, 2015, he was sentenced to two-and-a-half to five years imprisonment. *Id*. The Pennsylvania Superior Court affirmed the judgment on appeal, *id*. at *1, and the Supreme Court of Pennsylvania denied allocatur, *Commonwealth v. Holmes*, 182 A.3d 990 (Pa. 2018).

1

Holmes was released on parole on July 8, 2018. (Order to Recommit, ECF No. 36 Ex. A.) Under state law, once a prisoner is paroled, the balance of his maximum sentence is served on parole. *See Commonwealth v. Mattucci*, 305 A.3d 1011, 2023 WL 6210633, at *3 (Pa. Super. Ct. 2023). Because Holmes received credit for his pretrial incarceration, *see* (Docket Sheet, *Commonwealth v. Holmes*, CP-39-CR-3636-2014 (Lehigh Cnty. Ct. Commp. Pl.), at 1), his parole was set to end on August 14, 2019, when his maximum sentence was reached, *see* (Order to Recommit). In February of 2024, Holmes was recommitted for a parole violation that occurred in March of 2019. (Order to Recommit; Notice of Board Decision, ECF No. 41-2.) He was released again on March 17, 2024, without further supervision. (Parole Agent Email, ECF No. 41-1; Order to Recommit; Notice of Board Decision.)

B

On June 12, 2019, Holmes filed a *pro se* petition for relief under Pennsylvania's Post Conviction Relief Act. *Commonwealth v. Holmes*, No. 3115 EDA 2019, 2020 WL 3412717, at *1 (Pa. Super. Ct. June 22, 2020). On October 9, 2019, the PCRA court denied the petition, finding him ineligible for PCRA relief because he was no longer serving a sentence of incarceration, parole or probation on the underlying crime. *Id*. The Superior Court affirmed, *id.*, and the Pennsylvania Supreme Court denied allocatur, *Commonwealth v. Holmes*, 242 A.3d 311 (Pa. 2020).

C

On June 28, 2019, Holmes filed a *pro se* habeas petition under § 2254. (ECF No. 1.) The Court stayed that petition pending completion of the PCRA proceedings, (ECF No. 11), and Holmes filed an amended petition on January 13, 2021, (Am. Pet., ECF No.

13).[1] On June 18, 2024, Judge Arteaga recommended denial and dismissal of Holmes's petition on mootness grounds, finding Holmes is no longer "in custody" under § 2254(a) and had not demonstrated collateral consequences that would enable him to maintain his petition. (R&R, ECF No. 47.)

On July 2, 2024, Holmes objected to the R&R. (Objs., ECF Nos. 48, 49.) He argues that Judge Arteaga mischaracterized his petition as a challenge to the civil asset forfeiture that followed his state-court conviction and that this forfeiture constitutes a collateral consequence that prevents his petition from being moot. (Objs. at 4–7.) He further argues that denying his petition as moot will allow police misconduct to go unreviewed by the federal courts. (*Id.* at 9.) The Court sustains the first and second objections in part and overrules the third. Most of Holmes's claims are moot, the remaining claims uncognizable or meritless, and the Court denies the petition accordingly.[2]

II

Under § 2254(a), a habeas petitioner must be "in custody pursuant to the judgment of a State court" at the time he files his petition. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). But a petitioner's release from custody while his petition is pending does

---

[1]   Holmes raises eight claims: Trial counsel was ineffective for failing to (1) argue that law enforcement viewing his house through binoculars was an illegal search; (2) present a witness at the suppression hearing who would contradict the Commonwealth's witnesses; (3) object to the allegedly unconstitutional search and seizure of Holmes's house; (4) argue that the prosecutor's involvement in the search of his vehicle made him unconstitutionally biased; (5) object to the use of suppressed evidence at trial; (6) call a police detective to testify that another detective's affidavits were false; and (7) a due process violation for the trial court's failure to suppress items seized from Holmes's car; (8) a *Brady* violation because the Superior Court permitted the Commonwealth to introduce new evidence on appeal to justify the use of suppressed evidence at trial. *See* (Am. Pet. at 6–23).

[2]   Because Holmes objects to the collateral consequences determination in the R&R, which affects all his claims, the Court reviews the R&R *de novo*. 28 U.S.C. § 636(b)(1); *see also Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998).

not necessarily moot the petition. *Id.* For a released petitioner to maintain suit, "some concrete and continuing injury other than the now-ended incarceration or parole — some 'collateral consequence' of the conviction — must exist." *Id.*

Collateral consequences are not presumed. *Abreu v. Superintendent Smithfield SCI*, 971 F.3d 403, 406 (3d Cir. 2020). Instead, the Court must consider "the likelihood that a favorable decision would redress the injury or wrong. It is not enough if collateral consequences proffered by the petitioner amount to a possibility rather than a certainty or even a probability." *Id.* (cleaned up).

### III

Holmes was in custody when he filed his petition, but his release on March 17, 2024, subject to no further supervision, means he is no longer "in custody" under § 2254(a). *See Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 351–52 (1973). Thus, to maintain his suit, he must demonstrate some collateral consequence of his conviction. *Spencer*, 523 U.S. at 7. The collateral consequence Holmes cites is the civil asset forfeiture that occurred following his conviction, when a state court held that his car and five items found therein constituted derivative contraband. (ECF No. 36 at 5; Forfeiture Op. at 8, ECF No. 36 Ex. B.) That forfeiture is insufficient to prevent most of his claims from being moot. Of the two claims that are not moot, one is not cognizable and the other fails on the merits.

### A

#### 1

Following trial, Holmes filed a motion pursuant to Pennsylvania Rule of Criminal Procedure 588, seeking the return of property that had been seized from him

during the investigation. *See* (Forfeiture Op. at 1, 8, ECF No. 36.) Under Rule 588, a person "may move for the return of [seized] property on the ground that he or she is entitled to lawful possession thereof." Pa. R. Crim. P. 588(a). If the movant establishes lawful possession, "the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited." Pa. R. Crim. P. 588(b). "If the Commonwealth seeks to defeat the [movant's] claim, it bears the burden to prove, by a preponderance of the evidence," that the property is contraband. *Commonwealth v. Trainer*, 287 A.3d 960, 964 (Pa. Commw. Ct. 2022). To meet this burden, the Commonwealth "must establish a specific nexus between the property and the criminal activity." *Id.*

Although Rule 588 is a rule of criminal procedure, forfeitures under that rule are civil, not criminal, in nature, and so can occur "in the absence of a criminal conviction," *Commonwealth v. Irland*, 193 A.3d 370, 395 (Pa. 2018), or even after an acquittal, *Trainer*, 287 A.3d at 964. But "it is a well-settled proposition of law that the Commonwealth may not permanently acquire derivative contraband which it has initially seized unconstitutionally," and evidence that would be subject to the exclusionary rule at trial cannot be used in a forfeiture proceeding. *Commonwealth v. Anthony*, 613 A.2d 581, 584 (Pa. Super. Ct. 1992).

2

During hearings on Holmes's motion, the Commonwealth moved to condemn and forfeit Holmes's car and six items found in it, arguing — based on the evidence adduced at trial and some additional testimony — that they were derivative contraband. *See* (Forfeiture Op. at 1, 9). The evidence at trial proved that stolen property was found in

Holmes's trunk, and Holmes did not contest that issue, or the location of his property relative to that stolen property, at the Rule 588 hearing. *See* (*id.* at 4–5, 10). The court found that the car and one item "were used or intended to be used to commit a criminal act" for which Holmes was convicted and also found that there was a "sufficient nexus between [four other] items and the criminal activity." (*Id.* at 10.) Accordingly, it held the car and five items were derivative contraband subject to forfeiture. (*Id.*) But, finding no nexus between the seventh item (cash) and any criminal activity, the court ordered the money returned to him. (*Id.*)

B

As to whether the civil forfeiture was a collateral consequence of Holmes's conviction, what constitutes a collateral consequence can be unclear. *Cf.* 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.4(d) (4th ed. 2024); *Chaidez v. United States*, 568 U.S. 342, 349 n. 5 (2013) ("We have never attempted to delineate the world of 'collateral consequences[.]'"). But in the guilty plea context, some circuit courts have expressly held that civil asset forfeiture is a collateral consequence of the plea. *See, e.g., U.S. Currency in the Amt. of $228,536.00*, 895 F.2d 908, 915–16 (2d Cir. 1990); *Harris v. Allen*, 929 F.2d 560, 562 (10th Cir. 1991); *cf. Chaidez*, 568 U.S. at 349 n.5 ("[E]ffects of a conviction commonly viewed as collateral include . . . civil forfeiture[.]") (citing *Padilla v. Kentucky*, 559 U.S. 356, 376 (2010) (Alito, J. concurring)). In light of this "commonly" held view that civil asset forfeiture is a consequence of a criminal conviction, and absent guidance on how to determine what constitutes a collateral consequence, the Court will treat the forfeiture of Holmes's property as a collateral

consequence of his conviction and decide whether a favorable decision on the merits of Holmes's claims would likely redress this alleged injury.[3]

C

Holmes's property was forfeited because the state court found a nexus between that property and the crime for which the jury convicted him. (Forfeiture Op. at 10.) For Holmes to show that a favorable decision on any of his habeas claims would make it likely his alleged injury can be redressed, overturning his conviction would have to affect a future forfeiture decision.[4] Five of Holmes's claims have no connection to a

---

[3] Because civil asset forfeiture does not *require* a predicate conviction, it is not clear whether forfeiture after a conviction is necessarily a *consequence of* conviction. Where the criminal trial and civil forfeiture proceeding both rely on the same evidence and course of conduct, the Commonwealth, having already proven criminal activity beyond a reasonable doubt, effectively only needs to demonstrate a nexus between that activity and the property. Here, the state court recounted the evidence of criminal activity adduced at trial, then pointed to Holmes's conviction. *See* (Forfeiture Op. at 2–8, 10). Thus, while civil forfeiture is not necessarily dependent on a conviction, where — as in this case — forfeiture follows a conviction, it might be so dependent as a practical matter. *Cf. Collateral Consequence*, Black's Law Dictionary (12th ed. 2024) ("The *indirect implications* of a criminal conviction, esp. as it may affect the defendant's immigration status, property forfeitures, civil-litigation posture, etc.") (emphasis added).

Viewing Holmes's civil forfeiture as a collateral consequence does not mean the Court is permitting him to use the habeas statute to collaterally attack the forfeiture proceeding. Holmes is not requesting the Court grant him relief from the order of forfeiture. His habeas claims concern the validity of his conviction; the forfeiture is the ongoing consequence that prevents his habeas petition from becoming moot.

[4] Holmes can presumably bring another Rule 588 motion if he is retried. *See In re Mighty Mouse*, --- A. 3d. ---, 2025 WL 63362, at *4–*5 (Pa. Commw. Ct. 2025) (noting criminal defendants must bring these motions while the trial court has jurisdiction over the criminal case); *Commonwealth v. Anthony*, 613 A.2d 581, 584–85 (Pa. Super. Ct. 1992) (noting that where multiple prosecutions arise out of a single search or seizure, a suppression decision during the first prosecution does not prevent a judge in the second prosecution from hearing new, previously unavailable evidence).

If the Commonwealth chose not to re-try Holmes, however, he would need to collaterally attack the forfeiture decision, which raises collateral estoppel issues. *See Commonwealth v. Perez*, 941 A.2d 778 (Pa. Commw. Ct. 2008) (holding a movant was collaterally estopped from challenging a forfeiture proceeding based on drug possession, his criminal conviction for which had been *nolle prossed*, where the order had become final years ago). The Court assumes that the possibility that the Commonwealth will not retry the case is not a factor in the "likelihood of redress" analysis, given that this issue would make redress of nearly any collateral consequence too speculative.

possible future forfeiture decision, so a favorable decision on the merits of those claims will not redress his alleged injury.

1

Claim three concerns the constitutionality of the search of Holmes's house. (Am. Pet. at 65–74.) But at the suppression hearing, the Commonwealth agreed to not use any evidence from that search based on deficiencies in the warrant, (H'rg Tr. March 25 at 7:4–16), and no forfeiture decision concerning Holmes's car and items found therein would require that evidence.

Claim four cites alleged prosecutorial bias based on the prosecutor's presence during the search of Holmes's vehicle, (Am. Pet. at 74–81), but whatever bearing this issue could have on a civil forfeiture proceeding, nothing would prevent the District Attorney's Office from proceeding with a different prosecutor.

Claim five centers on the mention at trial of certain evidence Holmes claims was suppressed because it came from his house, (Am. Pet. at 82–85), but overturning a conviction on that basis would have no effect on any forfeiture decision concerning Holmes's vehicle and the items therein.

Claim six pertains to Holmes's desire to confront and impeach the detective affiant whose affidavits supported the search warrant for his house, (Am. Pet. at 86–91), but that issue would have no bearing on any forfeiture decision.

Finally, Claim eight concerns an alleged *Brady* violation, (Am. Pet. at 96–99), but even if *Brady* applied at a forfeiture proceeding, the subject of Holmes's claim would not impact any forfeiture decision given the lower burden of proof.

2

Holmes's first, second, and seventh claims, on the other hand, concern pretrial suppression proceedings, (Am. Pet. at 49–65, 91–95), which can affect forfeiture proceedings because unconstitutionally obtained evidence cannot be used to obtain forfeiture of derivative contraband. The trial court allowed the Commonwealth to present evidence resulting from the vehicle search, which was key to the conviction and, given the items seized, would be essential to any forfeiture decision. Should the Court find in his favor on these claims, Holmes's ability to show a likelihood of redress is a more complex question. Ultimately, Claim two is still moot, and although Claims one and seven are not moot, one is meritless and the other uncognizable.

D

In Claim two, Holmes argues that his trial counsel was ineffective for failing to present at the suppression hearing the testimony of a private investigator who would have contradicted the police detectives' testimony. (Am. Pet. at 55–65; Am. Pet. Ex. D.)[5] Detective Chad Wasserman, of the Bethlehem Police Department, and Detective Jeffrey Bruchak, of the Whitehall Police Department, were assigned to the same Lehigh County task force. (H'rg Tr. March 17, 2015 at 15:10–20; H'rg Tr. March 20 at 4:15–5:1.) Around 7 a.m. on August 13, 2014, Wasserman received a call about a burglary at a local RadioShack, at which point he and Bruchak drove together to Holmes's house to surveil it. (H'rg Tr. March 17, 2015 at 15:24–21:2; H'rg Tr. March 20 at 5:6–7:7.) After

---

[5] Holmes contends that counsel failed to present this testimony at either the suppression hearing or trial, (Am. Pet. at 55), but the subject of the testimony Holmes wanted to challenge wasn't a trial issue. Further, what occurred at trial would not likely impact a future forfeiture decision given the lower burden of proof in that proceeding. Thus, the Court considers Holmes's claim only with respect to the suppression hearing.

9

driving past the house and briefly parking their car on the next block to avoid being seen, they decided to move to a location where they could see the house, choosing a parking lot about 200 yards away. (H'rg Tr. March 17 at 26:1–28:24, 34:21–35:1; H'rg Tr. March 20 at 8:20–11:4, 19:12.)

Sometime between 7:15 and 7:30 a.m., while Bruchak used binoculars to view the area around the house, Wasserman communicated with the detectives investigating the burglary, who described the security footage to him as he, in turn, told Bruchak. (H'rg Tr. March 17 at 28:11–33:21, 50:7–11; H'rg Tr. March 20 at 11:8–12:17.) Bruchak also told Wasserman about what he learned, including about individuals and a vehicle at the house that matched the description from the detectives at RadioShack. (H'rg Tr. March 20 at 8:20–9:3, 11:8–24:10.) Wasserman then notified the detective who ordered the stop of Holmes's car. (*Id.* at 24:11–15; H'rg Tr. March 25 at 20:12–21:12, 41:4–6.) Holmes was driving his car when it was stopped, and that stop led to the search and seizure of various items, including the stolen cellphones that formed the basis of the charge against him.[6]

According to Holmes, the private investigator his attorney should have called would have testified that he spoke with the former manager of the RadioShack, who said that he showed surveillance footage to detectives around 9 a.m., long after Bruchak and Wasserman said they were given a description of the burglars and their vehicle by the detectives investigating the burglary. (Am. Pet. at 55–65; Am. Pet. Ex. D.) The state court's decision not to suppress the vehicle search was based on the

---

[6] The stolen phones came from a Verizon store that had been burgled earlier that same morning, not from the RadioShack burglary that prompted police to surveil Holmes. *See Holmes*, 2017 WL 2541048, at *1–*2.

10

consistency between the detectives' observations and what they had been told about the surveillance video. *See Holmes*, 2017 WL 2541048, at *4, *7. Had the court not believed this testimony, there would have been no justification for the stop of Holmes's car, which ultimately led to its search. *See id.*

For the Court to grant relief on Holmes's claim, it would need to find that, *inter alia*, Holmes likely would have prevailed on the suppression motion and there is a reasonable likelihood he would not have been convicted absent that evidence. *See Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005) (applying this standard to a claim of ineffective assistance for failure to bring a suppression motion). Holmes's claim is based on the private investigator's purported statement, and besides the detectives' testimony, no evidence on this issue was offered at the suppression hearing. So to find that Holmes likely would have prevailed, the Court would have to find that the trial court likely would have credited the investigator's testimony over that of the detectives.[7]

But even if the Court were to conclude that Holmes was likely to have succeeded on the suppression motion, he would still have to show a likelihood of success at a new suppression hearing, something that is impossible to forecast. Given the passage of time, the possibility of additional evidence from the Commonwealth,[8] and the fact that the credibility of Holmes's witness was never tested, the Court cannot say that a

---

[7] The petition can also be construed to claim that defense counsel should have called the manager himself to testify. *See* (Am. Pet. at 59) (mentioning that the manager's testimony was never offered).

[8] The detectives who investigated the RadioShack burglary were not called at the suppression hearing, and there could be records that corroborate Wasserman's testimony that he communicated with those detectives via cellphone or police radio, *see* (H'rg Tr. March 17 at 30:7–12).

favorable decision here would likely result in redress of Holmes's alleged harm.  In other words, the chance that granting Holmes relief would redress the harm from the allegedly improper civil asset forfeiture is merely "a possibility rather than a certainty or even a probability." *Abreu*, 971 F.3d at 406.  Claim two is moot.

### E

Holmes's two remaining claims are seven, in which he argues that the trial court's decision not to suppress the search of his vehicle violated his due process rights because the judge ignored certain facts, (Am. Pet. at 91–95), and one, in which he argues that his trial counsel was ineffective for not objecting to the use of binoculars to surveil the area outside his house (which led to the stop and search of his car) as an unconstitutional search, (Am. Pet. at 49–55).

A favorable decision on the merits of either claim would likely result in redress of Holmes's alleged injury.  Relief on Holmes's seventh claim would amount to finding that the trial court's decision concerning the search of his *car* was erroneous because that search was irredeemably tainted by either (1) the unconstitutional search of Holmes's *house* or (2) the prosecutor's presence at the vehicle search.  And relief on Holmes's first claim would amount to finding the surveillance essential to justifying the stop and search of his car was unconstitutional.  In either case, the Court's decision would mean that, even after a new suppression hearing, the results of the vehicle search would have to be suppressed at trial and, accordingly, could not be used to justify forfeiture.  But to obtain relief from the Court, Holmes must show that these claims have merit.  He cannot.

1

Where a state prisoner was given an "an opportunity for full and fair litigation of a Fourth Amendment claim, [he] may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). Holmes received such an opportunity in this case, where the trial court first heard his motion to suppress and the appellate court reviewed the issue on direct appeal. *Holmes*, 2017 WL 2541048, at *3–*7; *see Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002) (noting structural deficiencies, but not mere allegations of error, can surmount *Stone*). Holmes's seventh claim is nothing more than a Fourth Amendment claim dressed up in due process language, and is accordingly barred. *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986).

2

To succeed on his first claim, Holmes must show that (1) his "counsel's performance was deficient," and (2) he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[9] But counsel cannot be ineffective for failing to pursue a meritless claim, *United States v. Bui*, 795 F.3d 363, 366–67 (3d Cir. 2015), and there is no merit to Holmes's argument that it was unconstitutional for the detective to use binoculars to view, from 200 yards away, activity that occurred in the yard around his house.

To show that the detective's search was unconstitutional, Holmes must demonstrate that (1) he had a subjective expectation of privacy in the yard around his

---

[9] The general prohibition against presenting Fourth Amendment suppression claims on collateral review does not apply to ineffective assistance claims concerning counsel's *failure* to raise a Fourth Amendment claim. *Kimmelman v. Morrison*, 477 U.S. 365 (1986).

house and (2) this subjective expectation is also reasonable. *California v. Ciraolo*, 476 U.S. 207, 211 (1986). The Supreme Court has never "deviated from the understanding that mere visual observation does not constitute a search." *United States v. Jones*, 565 U.S. 400, 412 (2012). And the fact that what is viewed "is within the curtilage does not itself bar all police observation." *Ciraolo*, 476 U.S. at 213. "Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible." *Id.* The use of an instrument, such as binoculars or a flashlight, is not *per se* prohibited. *See United States v. Lee*, 274 U.S. 559, 563 (1927); *Texas v. Brown*, 460 U.S. 730, 739–40 (1983).

In light of these principles, Holmes has not established that he had a reasonable expectation of privacy such that the police conducted an unconstitutional search when a detective viewed the yard around his house through binoculars from 200 yards away. The fact that there were bushes outside the house that somewhat restricted the view of his property does not preclude a detective's observation from "a public vantage point where he has a right to be and which renders the activities clearly visible." *Ciraolo*, 476 U.S. at 213; *see also Katz v. United States*, 389 U.S. 347, 351 ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection."). And Holmes offers no reason why the detective's use of binoculars to assist his observation should alter this conclusion. *Cf. Kyllo v. United States*, 533 U.S. 27, 34 (2001) (guarding against the kind of "sense-enhancing technology" that would allow police to obtain "information regarding the interior of the home that could not otherwise have been obtained without physical 'intrusion into a constitutionally protected

14

area'").[10] Because the argument Holmes says his counsel should have made would have been meritless, counsel's conduct did not constitute ineffective assistance.

## IV

A certificate of appealability should only be issued if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the District Court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Holmes has made no such showing, so no certificate should issue.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

---

[10] Holmes's reliance on *Commonwealth v. Lemanski* is unavailing, given the specific factual circumstances that formed the basis of the court's opinion. *See* 529 A.2d 1085, 1091–93 (Pa. 1987) (finding the officer used specialized equipment to look into a greenhouse attached to and accessible from the house and whose contents were not exposed to public view because they could not be seen from the nearest public road 200 feet away and without seeking out a gap between the bushes outside the house).